Cesar v. Sessions. Thank you, Your Honor. May it please the Court, Ted Polovinsky from Davis Polk for Petitioner Franz Cesar. The Board of Immigration Appeals erred when it held Mr. Cesar's guilty plea for misdemeanor child endangerment under New York statute was grounds for removal under the Immigration and Nationality Act. That statute, Section 26010 of New York's penal law, is not categorically a removable offense of child abuse, child neglect, or child abandonment under the INA. The reason for that is because New York's statute is broader than the generic definition of the federal offense in the INA for two independent but interlocking reasons. The first reason is that the New York statute punishes conduct that poses a risk of harm not only to physical and mental well-being of a child, but also to the moral well-being of a child. This is the category of overbreadth that was identified by the Motion Panel when it determined that counsel should be appointed for Mr. Cesar. The second ground is that it punishes conduct that does not, not only conduct that actually causes injury, but also conduct that generates a mere non-speculative potential for injury. Each of these features of 26010 by themselves would be sufficient to conclude that the New York state statute is broader than the federal statute, but together they leave no doubt. And in this brief, the government didn't seriously dispute a number of the key threshold points on this. 26010 on its face criminalizes conduct that generates a potential that a child will suffer a purely moral harm. The text of the statute actually says that. It criminalizes conduct likely to be injurious to the physical, mental, or moral welfare of a child. But even if the texts were not clear, there is most definitely a very realistic probability, not a theoretical possibility of prosecution for conduct that generates only a potential for moral harm. We've cited a number of published cases in our brief. I think the amici have cited a number of published cases as well, all upholding prosecutions or convictions, all permitting prosecutions or convictions of conduct that generated only a potential for moral harm. Those include towing a trailer full of stolen chairs with a teenage son in the car. They include leaving a 4-year-old at home alone for 15 minutes. They include having or using drugs in the same apartment as a child. Why isn't a criminal penalty that reaches conduct that's likely to harm a child's moral welfare, why is that so clearly not a crime of child abuse, neglect, or abandonment? The reason, Your Honor, is that applying the ordinary tools of statutory construction that the Supreme Court instructed courts to apply in Esquivel-Quintana, it's clear that there is something special, something different about the New York statute that makes it broader than the general crime. And it's set forth in our briefs in some detail, and I think not really seriously disputed by the government, those tools all make clear that child abuse, child neglect, and child abandonment cannot be read to include conduct that generates only a potential for moral harm. The Alvarez case in New York actually describes the kind of conduct that can satisfy the New York statute in a very sharp way. It held broadly that engaging in criminal activity while children are present is likely to endanger their physical, moral, or mental or moral welfare. That's not child abuse, respectfully. Instead of disputing that point, I understood the government in its brief really to focus its main contention on the assertion that this court is bound by Flores v. Holder, and that as a result of that it must be. But isn't that a good choice on their, just making sure I'm understanding the argument, that's a good choice on their point because if they prevail, we don't if we're bound by Flores here. That's true. If the court is bound by Flores, that's true. And I guess I don't think that either argument, for what it's worth, I think is a particularly strong one on the government's part, but I agree that's probably the better one. What I'd say is there are a lot of reasons, though, why Flores doesn't bind this court. We've addressed a number of them in our briefs, but I'd like to focus on two of them in particular today at this argument. The first is that Flores did not address the precise question before this court when it concluded that the statute was ambiguous. The second reason, which I'll get to later, is the fact that the BIA's determination rests on a misinterpretation of the state law, which is something that Flores didn't address at all and which is never entitled to Chevron deference. And so on the first point, the statutory language in the INA here, crime of child abuse, child neglect, or child abandonment, is not ambiguous on the precise question before the court today. And that precise question, to put a finer point on it, is whether conduct that creates a mere potential for injury to a child's moral welfare constitutes a crime of child abuse. The answer to that question, as I've said before, is an unambiguous no. Whether or not that term might be ambiguous as to some other question, it is not ambiguous at all on the question of whether conduct that criminalizes a purely risk of pure moral harm to a child is a crime of child abuse. So is it your argument, then, that if we accept your argument, you're saying we would not be creating a circuit split with the Third Circuit on whether the statute is ambiguous, the Third Circuit having addressed this question after Escobar-Quintana? I think that is likely correct, Your Honor, insofar as the Third Circuit wasn't reaching a conclusion that on this precise question, at least, that the statute was unambiguous. And the precise question, again, is one that's posed by the New York statute and the fact that the New York statute uniquely includes this moral harm aspect to it. So what that means, though, is that in this case, what the court would need to conclude only is that the statute is unambiguous as to that precise question. And Escobar-Quintana tells us that that's the way you're supposed to conduct this analysis. But Escobar-Quintana, in Escobar-Quintana, the court was considering a somewhat different question about the specific age of consent. That seems a different interpretive task than what we are called on to deal with here. How do you? It's most definitely a different statute or a different language within the INA, but the task at a higher, broader level is the same. And the task is to look at, to answer the precise question when you're evaluating whether there's ambiguity in the INA. Look at the precise question that's being posed and find out whether the ordinary tools of statutory construction yield an unambiguous answer. It's not enough that there's not a definition in the statute. It's not enough that the language may be ambiguous in the abstract. The question is whether it's ambiguous on this precise question. So for that reason, Escobar-Quintana, I think the analysis in Escobar-Quintana instructs the court that this is the analysis that you're supposed to conduct when you're considering whether the statute's ambiguous on this precise question. Now, before my time is up, I'd like to focus on a separate and independent reason why the Court's not bound by Flores, which is that the BIA's conclusion that 26010 is a crime of child abuse rests on an error of State law. The reason for that is that the definition of child abuse that the INA came up with in Velazquez-Herrera and repeated wholesale in Mendoza-Osario talks about conduct that criminalizes only physical or risk of physical or mental harm, not moral harm. It mentions moral harm, but moral harm is a subset within that definition of mental or emotional harm. The New York statute, and I see my time is up, if I may have a minute just to finish this quick thought, the New York statute obviously is disjunctive and focuses on moral harm separately. The BIA, in concluding that it fell within its generic definition of child abuse, erred, and it erred as a matter of State law. No deference is accorded to it, and for that reason we ask that the Court grant the petition and vacate the order below. Thank you. Good morning, Your Honors, and may it please the Court. Jessica Strokos on behalf of the United States Attorney General. Your Honors, the sole question raised to this Court this morning is whether a conviction under Section 260.10, Subsection 1 of the New York Penal Laws is a removable offense. The government believes that this Court should find that it is so because that statute of conviction is a categorical match with the Board's federal definition of a crime of child abuse, child neglect, and child abandonment. Indeed, the Board's definition states that at a minimum it encompasses convictions for offenses involving the infliction on a child of physical harm, mental or emotional harm, and includes acts injurious to a child's morals. Viewing the Board's definition as a whole on its face, both the statute of conviction in this case and the Board's definition include acts injurious to the child's moral welfare. And because of that, the statute of conviction and the section of the Immigration and Nationality Act are a categorical match. Are you familiar with the litigation ongoing in Matthews v. Sessions in this Court? I am, Your Honor, yes. I believe my colleague Song Park argued that case in May of this year. And do you agree that the decision in that case is likely to be controlling here, or is there some distinctive aspects of this case? I believe that these two cases are remarkably similar, Your Honor. I believe they involve the same statute of conviction under New York law. And at least part of that case could have effect on this case, namely Mr. Cesar's argument that this Court is not bound by its prior decision in Flores. To say so, however, Mr. Cesar has to rely on this Court's ability as a three-judge panel to overrule a prior three-judge panel, which is a rarity, Your Honors. And it is so, and as this Court described in Doscher— I'm sorry, you're talking about Flores now. Yes, Your Honor. For this Court or for the Matthews panel to overrule a prior three-judge panel in Flores. You're agreeing that that issue is before the Matthews panel? Yes, that issue is before the Matthews panel, and I believe it's been briefed and discussed pretty extensively already. And argued already, yes. But you are then going on to address why this, neither the Matthews panel nor this panel has the ability to set aside the decision in Flores. We can't overrule a prior panel's decision. Yes, Your Honor. Under general principles of stare decisis, but also under the Doscher case that Mr. Cesar relies upon, he very smartly selects that if any Supreme Court decision cast doubt on a prior decision of the Courts of Appeals, then the panel in this circuit may revisit. So then why doesn't Esquivel-Quintana undercut the decision in Flores? Because the holding of Esquivel-Quintana did not state that a panel of judges in any court need engage in statutory interpretation in one specific manner. The holding of that case was simply that the age of consent for a part of sexual abuse of a minor, statutory rape, was 16 years old, 16 years of age. That court did not hold that there is one method of statutory interpretation. Had that court held so, in fact, I would believe that the Supreme Court would have given more instruction to the Circuit Courts of Appeals on how to further apply that, because it could run amok, if you would say, in the Circuit Courts of Appeals, because you have many, many cases that apply Chevron Step 1 statutory ambiguity between Chevron and Esquivel-Quintana. It would not be limited to, say, this case or the Matthews case. And even Esquivel-Quintana recognized this fact when it said that the type of expansive multi-jurisdictional survey conducted was not a requirement in determining whether a statute is ambiguous. So in order for this court, or the Matthews court, to overrule Flores, this court would have to find that Esquivel-Quintana so fundamentally altered the relevant analysis in Flores as to require revisiting and overruling that precedent. And that simply has not occurred here, where the Supreme Court made no new instruction about how to apply Chevron Step 1 in Esquivel-Quintana. And, in fact, itself said that it was not requiring the type of analysis done in that case in every case. And it was addressing a particular, in some ways, singular issue of statutory interpretation, the question of age and the age of a consent for a sexual abuse statute, correct? Yes, Your Honor. It was addressing, I believe it was the California statutory rape statute it was addressing and what the age of consent was. I believe California said it was 18, and the individual had been found removable for sexual abuse of a minor, and the Supreme Court said that after doing this expansive multi-jurisdictional survey that the age of consent should have been 16 years old for purposes of the INA. And it did not even address the rest of the sexual abuse of a minor statute. It was only looking at this one very specific, very narrow question. You said that in the context of determining the appropriate, what is the age of consent when not specified in the statute, that multi-jurisdictional analysis might be helpful. I mean, I'm just trying to understand your argument.  That is to say, in construing words like abuse and neglect, a different approach might be required. Yes, Your Honor. And that is why the government believes that this court needn't revisit Flores, and in fact it shouldn't revisit Flores, and Flores remains binding precedent on this court, which means that the only question for this court to— Going back to Judge Livington's questions, why isn't this like determining the age of consent? This statute requires a likelihood of moral harm, or makes that a—envisions that as a kind of child abuse, but many other state statutes apparently don't. Wouldn't it be possible to do the same kind of survey and infuse the INA with meaning in that way, the same way Justice Thomas did in Esquivel-Cantana? It certainly would be possible, Your Honor, but as this court has already spoken in Flores to the issue, and that it's not necessary in every case, I believe that the government's argument would be that it would be inappropriate for this court to question the Flores decision, the prior panel's decision. Wouldn't you agree that the Esquivel-Cantana decision points in the other direction? I wouldn't, Your Honor, because Esquivel-Cantana states specifically that this type of multi-jurisdictional survey is not required in every case. And indeed, again, there's not one method of statutory interpretation. The Supreme Court has many, many different tools that it employs in statutory interpretation. They're cited on pages 13 and 14 of the government's brief. I believe we cite five tools that are routinely used, and those tools were also used by the Board of Immigration Appeals in defining what a crime of child abuse, child neglect, and child abandonment is. It did a survey of federal statutes. It looked at the text. It looked at the legislative intent. It looked at a survey of state statutes, and it came to this definition based on what it believed the legislative intent was. And also, Your Honor, to answer your question about the inclusion of morals in the statute of conviction in this case, I would point out that the Board's definition also includes acts injurious to a child's moral welfare. And while Mr. Caesar does argue that, that has to be ---- I think my colleague's argument was that it's not a reasonable construction of child abuse, neglect, or abandonment. Your Honors, the Flores Court has already decided that, and, in fact, every single court who has addressed this issue ---- How about the underlying statutory question? Why isn't it ---- Why are morals, threat to morals, properly included in the definition of risk to a child when the statutory language is abuse, neglect, or abandonment? Or when, yes, the statutory language, abuse, neglect, or abandonment. Your Honor, I would say, assuming that the Flores decision had been abrogated, or this court, or the Matthews court, so decide, it's because in Velazquez-Herrera, the Board went through an extensive analysis to determine that morals should be included, that the intent of Congress in 1996 was to protect children in all spheres of life, and that included protecting a child's moral welfare. But we have decisions here in which a child's moral welfare has been found to have been endangered when an infant is in a room where there's marijuana. I believe ---- And to have that lead to a deportation or removal order seems extreme. To answer your question, Your Honor, the government's position is that Mr. Caesars failed to show any reasonable possibility or probability that that type of case would lead to a removal. And, in fact, in the Board's decisions, in, I believe, footnote 3 of Velazquez-Herrera and another footnote in Mendoza-Osorio, they discuss cases that do limit under the New York statute what may be ---- If the Board has construed danger to morals to be included in the statutory language of abuse, neglect, or abandonment, what's there to prevent that from serving as a predicate for removal? Your Honor, the predicate for removal would be the New York statute in this case, the statute at issue. And for the New York statute, there have been shown ---- And I apologize. I see my time has run. But in the New York cases that Mr. Caesar has shown, none of those that are the types of cases to which you're alluding are shown to have resulted in convictions. And, indeed, those that have resulted in convictions ---- If they've resulted in prosecutions, we talk about realistic probability of having legal consequences. I mean, people, the guilty plea rate in these kinds of cases seems to be extraordinarily high, with very little, very few cases in which a penalty is actually imposed. If there are prosecutions that regularly result in guilty pleas and convictions from that angle, that still seems to me to potentially serve as a predicate for removal. Your Honor, a prosecution is certainly different from a conviction. Mr. Caesar may point to cases where there may have been prosecutions, but none of the cases he's really pointing to in context show that there have been a conviction for some of these cases. And, indeed, in Velasquez-Herrera and Mendoza-Osorio, the board points to cases that have been dismissed under this New York law, saying that there are significant limits. That there's a difference between having a handgun locked in a safe that no one knows about, that a child somehow gets his hands on, versus having multiple guns in the home that are not locked up. That there are factual differences like that that lead to either convictions or unsuccessful prosecutions. And a successful prosecution, a conviction, is what the board is looking for when categorically matching a federal definition and a state statute. Thank you, Your Honors. So, Your Honors, two or maybe three points, depending on whether I've got time for that. On the first point, there have been convictions of conduct that generates a pure risk of moral harm. The Weishaupt case in the Third Department affirmed a conviction of an individual who was arrested for towing stolen chairs with his teenage son in the car. The Richardson case in the Third Department is also a conviction, drugs in the home. And, in addition to that, the notion that there needs to be a successful prosecution is a misreading of Moncrief, which is where this comes from. Moncrief talks about a realistic probability that the state actually prosecutes the relevant offense. And, as your question implied, Judge Carney, that clearly happens here. Well, it doesn't precise. It has that language, I agree, but it doesn't exactly go on at length explaining that proof of prosecution is enough. I mean, there is a point. A prosecutor's charging decision is not an authoritative construction of the criminal law. I agree with that point in the abstract, Judge Livingston, but I would say also here that I think what the test in Moncrief was focused on was actually whether the state actually prosecutes this. Moncrief was seeking to try to avoid rulings that are based purely on the legal imagination or hypotheticals that people think up. It's very clear here that this statute gets prosecuted all the time for conduct that would generate only a mere risk of moral welfare to a child. This approach suggests that maybe, and maybe it's just something that's gone awry with the categorical approach generally, but if it extends to prosecutorial decision, I mean, I thought the purpose of the categorical approach was to keep courts out of having to get into the facts of the case before them. They can just apply this approach. Now the suggestion is we should get into looking at the charging decisions of various prosecutorial offices around the state whose statute we are examining. Well, I guess what I'd say on that, Your Honor, is that the court should do that when it determines whether or not this statute itself is actually covered or falls within the generic federal offense. You still have the benefit of the categorical approach not requiring individual assessments of fact in individual cases. I understand that to be the purpose behind the categorical approach. The last point I just want to emphasize is that we have offered a ground for vacating the BIA's order that would not necessarily even require the court to overrule Flores. And that is set forth in our briefs that the BIA's interpretation here rests on an error of state law. Flores did not consider at all. In fact, it specifically held that it was not going to consider because the petitioner there conceded injudiciously, I think, that 26010 fell within the BIA's definition. It clearly doesn't. And for that reason, that independent reason, that's an independent reason why the court need not follow Flores here. Thank you very much. Well argued. Thanks.